UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

O'NEIL DAMION MITCHELL
          Petitioner,

    v.                                      20-CV-1183 (JLS)

CHAD WOLF, et al.,

          Respondents.
_____

## DECISION AND ORDER

Petitioner O'Neil Damion Mitchell ("Petitioner"), an immigration detainee currently detained at Buffalo Federal Detention Facility ("BFDF"), seeks an emergency writ of habeas corpus pursuant to 28 U.S.C. § 2241. Dkt. 1. Mitchell seeks injunctive relief in the form of his immediate release, declaratory relief related to his ongoing detention and BFDF's alleged failure to meet Center for Disease Control ("CDC") standards for preventing the spread of coronavirus at BFDF, and an order that his ongoing immigration detention violates the Fifth, Fourteenth, and Eighth Amendments to the Constitution. Dkt. 1, at 142-43. Alternatively, Mitchell seeks a due process bond hearing before an immigration judge. Dkt. 1, at 143.

For the reasons below, the Court denies Mitchell's COVID-19-related substantive due process claim and request for injunctive and declaratory relief. The balance of his petition will be decided after merits briefing is complete.

## BACKGROUND

Mitchell, a detainee at BFDF, filed this emergency petition on September 1, 2020. Dkt. 1. On September 9, 2020, this Court entered a text order directing expedited briefing on Mitchell's request for a preliminary injunction and COVID-19-related claims. Dkt. 2. Accordingly, Respondents responded to Mitchell's request for injunctive relief on September 16, 2020. Dkt. 3. Mitchell did not reply. Pursuant to the September 9, 2020 text order, Respondents are ordered to respond to Mitchell's petition and arguments regarding his prolonged detention within 45 days of that order.[1] Dkt. 2.

## DISCUSSION

Mitchell asserts that at the BFDF, contracting COVID-19 is "almost inevitable" and that Respondents have "consistently shown deliberate indifference to the risk of contracting COVID-19 infection." Dkt. 1, at 138, 141. This deliberate indifference includes not enforcing the use of masks and social distancing, despite Respondents' "knowledge of the Petitioner's underlying disease, including but not limited to high blood pressure." Dkt. 1, at 141. In light of this deliberate indifference, Mitchell claims his ongoing immigration detention in in violation of the Fifth and Fourteenth Amendments. Dkt. 1, at 138, 141. Respondents argue that

---

[1] The Court's decision today addresses only Mitchell's COVID-19-related claims, and not the underlying merits of his habeas petition based on prolonged detention. Because briefing on the latter is not complete, the Court does not include any factual background relevant to the latter here, and only summarizes the procedural history as needed. *See* Dkt. 2 (text order providing for separate briefing schedules).

Mitchell's constitutional claim is meritless because Respondents have provided him with extensive protections to avoid COVID-19 exposure and, even assuming that Mitchell is a vulnerable person, he has received or been offered the protections that would rectify potential due process violations, in accordance with *Jones v. Wolf,* 20-CV-361, 2020 WL 1643857 (W.D.N.Y. Apr. 2, 2020). Dkt. 3, at 4-6.

## I.   LEGAL STANDARD

### A.   Preliminary Injunction

In order to obtain a preliminary injunction, the moving party must establish the following: (1) a likelihood of irreparable harm absent preliminary relief; (2) a likelihood of success on the merits; (3) the balance of equities tipping in favor of the moving party; and (4) the public interest is served by an injunction. *See Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008). In the Second Circuit, the standard for an entry of a TRO is the same as for a preliminary injunction. *See, e.g., Rush v. Hillside Buffalo, LLC,* 314 F. Supp. 3d 477, 484 (collecting cases). "A higher standard applies . . . if the requested injunction is 'mandatory,' altering rather than maintaining the status quo, or if the injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if defendant prevails at a trial on the merits." *People for Ethical Treatment of Animals v. Giuliani,* 105 F. Supp. 2d 294, 303 (S.D.N.Y. 2000), *adopted,* No. 00 CIV. 3972 (VM), 2000 WL 1639423 (S.D.N.Y. Oct. 31, 2000), *aff'd,* 18 F. App'x 35 (2d Cir. 2001); *see also Tom Doherty Assocs. v. Saban Entm't, Inc.,* 60 F.3d 27, 33-34 (2d Cir. 1995). The Second Circuit has instructed that "a mandatory injunction should issue

only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Tom Doherty Assocs.*, 60 F.3d at 34 (internal quotations and citation omitted). A preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24. The most important prerequisite for a preliminary injunction in this context is the showing of irreparable harm—the movant "must show that the injury it will suffer is likely and imminent, not remote or speculative, and that such injury is not capable of being fully remedied by money damages." *Basank v. Decker*, 449 F. Supp. 3d 205, 210 (2020) (first quoting *CF 135 Flat LLC v. Triadou SPY N.A.*, No. 15 Civ. 5345, 2016 WL 2349111, at *1 (S.D.N.Y. May 3, 2016); and then quoting *NAACP v. Town of E. Haven*, 70 F.3d 219, 224 (2d Cir. 1995)).

### B. Deliberate Indifference Claims

The Eighth Amendment's prohibition against cruel and unusual punishment prevents the government from treating the medical needs of incarcerated individuals with deliberate indifference. *Coronel v. Decker*, 449 F. Supp. 3d 274, 282 (S.D.N.Y. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)). The Supreme Court has held that persons in civil detention "deserve at least as much protection as those who are criminally incarcerated." *Charles v. Orange Cty.*, 925 F.3d 73, 82 (2d Cir. 2019) (citing *Youngberg v. Romeo*, 457 U.S. 307, 321-22 (1982)). Thus, for federal civil detainees, those rights are recognized under the due process clause of the Fifth Amendment or the Fourteenth Amendment. *Id.* To establish a

4

violation of a right to substantive due process, a plaintiff must demonstrate the government action was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *City of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998). The Supreme Court has held that deliberately indifferent conduct towards the medical needs of pretrial detainees is "egregious enough to state a substantive due process claim." *Charles*, 925 F.3d at 86; *Lewis*, 523 U.S. at 849-50.

To establish a deliberate indifference claim for unconstitutional conditions of confinement, a plaintiff or petitioner must show the official "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the [] detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Vides v. Wolf*, 6:20-CV-06293 EAW, 2020 WL 3969368, at *10 (W.D.N.Y. July 14, 2020) (quoting *Coronel*, 449 F. Supp. 3d at 284); *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). Similarly, to establish a claim of deliberate indifference to a petitioner or plaintiff's medical needs, the Second Circuit requires the petitioner or plaintiff to show a "serious medical need" and that the government "acted with deliberate indifference to such needs." *Halladene v. Decker*, 20 Civ. 2883 (GBD), 2020 WL 2133057, at *4 (S.D.N.Y. May 5, 2020) (quoting *Charles*, 925 F.3d at 86). A serious medical need "contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Charles*, 925 F.3d at 86 (citing *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)). As for deliberate indifference, a plaintiff or petitioner is required to show

5

that the officials "knew that failing to provide the complained of medical treatment would pose a substantial risk to [his or her] health or that [the officials] should have known that failing to provide the omitted medical treatment would pose a substantial risk to [his or her] health." *Halladene*, 2020 WL 2133057, at *4 (quoting *Charles*, 925 F.3d at 87).

*Jones v. Wolf*, 20-CV-361, 2020 WL 1643857 (W.D.N.Y. Apr. 2, 2020), and subsequent decisions in that case, provide a framework for challenges to the conditions of confinement based on deliberate indifference to the risk of the spread of coronavirus at BFDF. In *Jones*, Judge Vilardo addressed claims by nearly two dozen BFDF detainees that their continued civil detention during the COVID-19 pandemic violated their substantive rights under the Due Process clause of the Fifth Amendment. 2020 WL 1643857, at *2-3 (evaluating detainees' claim as an amalgam of two theories of substantive due process violations: unconstitutional conditions of confinement and deliberate indifference to serious medical needs). On April 2, 2020, the court concluded that the petitioners who qualified as vulnerable individuals—as defined by the CDC—had demonstrated irreparable harm as well as a likelihood of succeeding on their claim that the respondents were acting with deliberate indifference to unreasonably unsafe conditions at BFDF and to those petitioners' medical needs. *Id.* at *12-13. But the respondents could "rectify the ongoing violation by providing those petitioners who meet the CDC's definition of

6

vulnerable individuals with a living situation that facilitates 'social distancing.'" *Id.* at *14.[2]

Thus, courts in this circuit, including in the *Jones-Ramsundar* cases, have found that immigration detainees who suffer from medical conditions that put them at high risk if infected with COVID-19 have a serious medical need for purposes of the deliberate indifference analysis. *Vides*, 2020 WL 3969368, at *10 (collecting cases).

## II.  MITCHELL HAS FAILED TO SHOW A SUBSTANTIVE DUE PROCESS VIOLATION UNDER *JONES*

Mitchell has failed to meet his burden of showing that he suffers from medical conditions making him vulnerable should he contract COVID-19 and, thus, fails to demonstrate his conditions of confinement are unconstitutional or that he has a serious medical need under the *Jones* framework. *See Vides*, 2020 WL 3969368, at *10; *Ramsundar v. Wolf*, 20-CV-402, 20-CV-361, 2020 WL 1809677, at *3 (W.D.N.Y. Apr. 9, 2020) (denying the motions for TROs for those petitioners who may be "at heightened risk" of developing complications from COVID-19, but did not

---

[2] Judge Vilardo subsequently issued a temporary restraining order regarding certain identified vulnerable petitioners who had not been placed in single-occupancy cells. *See generally Ramsundar v. Wolf*, 20-CV-402, 20-CV-361, 2020 WL 1809677 (W.D.N.Y. Apr. 9, 2020). For those vulnerable petitioners who remained in dormitory settings, the court ordered the release of those petitioners unless the respondents implemented the following protective measures: placement in single-occupancy cells; accommodation to eat meals in those cells and to bathe and shower in isolation; the provision, without charge, of sufficient shower disinfectant, masks, and ample soap; and the requirement that all BFDF staff and officers wear masks whenever interacting with these petitioners. *Id.* at *5-6. Judge Vilardo converted the TRO to a preliminary injunction on April 27, 2020. *See Ramsundar v. Wolf*, 20-CV-361, 20-CV-402, 2020 WL 1986923, at *3 (W.D.N.Y. Apr. 27, 2020).

meet the CDC's criteria for vulnerability and therefore could not show a due process violation of deliberate indifference to medical needs).

Mitchell has not alleged or shown that he meets the CDC's definition of a "vulnerable individual." Neither have BFDF officials identified Mitchell as a "vulnerable individual." *See generally* Dkt. 3-6, Searls Decl. at 1-6 ¶¶ 1-15. Mitchell has alleged only that he has an "underlying disease, including but not limited to high blood pressure." Dkt. 1, at 141. A review of his attached medical records does not indicate that Mitchell suffers from any of the underlying medical conditions currently listed by the CDC as putting individuals at "increased risk of severe illness from COVID-19."[3] *Jones,* 2020 WL 1643857, at *7-8 (reviewing current CDC guidance and taking judicial notice that for people with advanced age, with underlying health problems, or both, COVID-19 causes severe medical conditions and has increased lethality); *see also Ramsundar* 2020 WL 1809677 at *1-2 (identifying the petitioners who met the CDC criteria for vulnerable individuals). As for Mitchell's high blood pressure, this condition is listed by the

---

[3] As of the date of this decision, the CDC's website lists the following underlying medical conditions that may place a person of any age at increased risk of severe illness from COVID-19: cancer, chronic kidney disease, chronic obstructive pulmonary disease, immunocompromised state from solid organ transplant, obesity (body mass index of 30 or higher), serious heart conditions (such as heart failure, coronary artery disease, or cardiomyopathies), sickle cell disease, and type 2 diabetes mellitus. *See Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, Ctrs. For Disease Control and Prevention (Sept. 28, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html. Mitchell has not alleged he is at risk because of his age.

CDC as possibly increasing the risk for severe illness from COVID-19[4]—but under the *Jones-Ramsundar* framework, there is no due process violation for individuals like Mitchell who may be at heightened risk of developing complications but do not meet the CDC's current criteria for vulnerable individuals. *Ramsundar*, 2020 WL 1809677, at *3; *see also Vides*, 2020 WL 3969368, at *11 ("Courts that have found that petitioners suffer from a serious medical need for purposes of the deliberate indifference analysis have done so only for detainees suffering from conditions recognized by the CDC as placing individuals at higher risk.") (collecting cases); *Rodriguez v. Wolf*, 20-CV-424, 2020 WL 1915290, at *1-2 (W.D.N.Y. Apr. 20, 2020) (dismissing the petition where petitioner did not identify any condition that makes him high risk under CDC guidelines).

Further, Respondents' documentation indicates that Mitchell has received or been offered numerous protections to decrease risks related to COVID-19, including many of those set forth by Judge Vilardo in the *Jones-Ramsundar* decisions. Dkt. 3, at 4. Mitchell is currently housed in the B-3 unit, a dormitory-style unit. Dkt. 3-6, Searls Decl. at 4 ¶ 6. On July 16, 2020, in an "effort to promote social distancing," Mitchell was offered—and declined—housing in a different unit where he would have a single cell. *Id.* at 5 ¶ 11; Dkt. 3-7 (Exh. A). Respondents indicate that BFDF is offering testing for any detainee who wants to be tested. Dkt. 3-6, Searls Decl. at

---

[4] *See Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions, supra* note 2 ("Based on what we know at this time, people with the following conditions might be at increased risk for severe illness from COVID-19:... hypertension or high blood pressure.")

9

5 ¶ 10. Mitchell himself was tested for COVID-19 on June 30, 2020, and the results were negative. *Id.* at 4 ¶ 7. Respondents also state that Mitchell is provided with soap, cleaning supplies, and face masks upon request and without charge. *Id.* at 5 ¶ 12. Mitchell has failed to refute this documentation and information provided by Respondents.

Respondents also detail the broader precautionary measures BFDF has implemented to respond to the coronavirus pandemic. *Id.* at 2-4 ¶ 4. These include maintaining social distancing between and among employees and detainees; medically screening arriving detainees; reviewing the custody status of detainees who are at higher risk; suspending activities where crowds may gather or where detainees may be in increased contact with one another; implementing a bathing schedule in BFDF to limit interactions; providing access to soap, hand sanitizer, masks, and gloves; and requiring BFDF staff to wear masks. *Id.* The last known positive case of a detainee at BFDF was April 21, 2020. *Id.* at 4 ¶ 8. As for employees, only three individuals who work at BFDF have tested positive, the latest positive case was July 23, 2020, and all three employees were cleared to return to work after being placed on leave. *Id.* at 5 ¶ 9. Mitchell has not set forth any additional facts to refute Respondents' assertions.

Thus, there is insufficient evidence to conclude that Respondents have acted with deliberate indifference towards Mitchell's medical needs or his current conditions of confinement in light of the COVID-19 pandemic. Mitchell has not alleged sufficient facts to show he is a medically vulnerable individual as defined by

the CDC and the standards set forth in *Jones-Ramsundar*. Respondents have indicated—and Mitchell has not refuted—that BFDF has enacted many of the protective measures recommended by the CDC and other entities for COVID-19 prevention. Additionally, Mitchell has refused certain protections, like single-cell housing, that would enhance his ability to socially distance himself from others. While this refusal is his right, the record as a whole does not establish that Respondents are required to release him from custody on the basis of due process. *Downer v. Searls*, No. 20-CV-6326 (W.D.N.Y. Aug. 18, 2020) (dismissing a substantive due process claim on substantially similar facts, including where the petitioner had tested negative for COVID-19, refused single-cell housing, and generally failed to refute the respondents' information regarding protective measures implemented at BFDF).

In *Jones*, the court was clear that a due process violation in these matters "stems from [the respondents'] failing to take the steps recommended by public health officials to protect high-risk individuals from contracting COVID-19." 2020 WL 1643857, at *1. But the court also concluded that the respondents could rectify the due process violation—and "judicially ordered release would not be necessary"— if they could provide petitioners "identified as vulnerable by the CDC with a living situation that facilities social distancing." *Ramsundar*, 2020 WL 1809677, at *3 (internal quotations omitted); *see also Downer*, No. 20-CV-6326, at 7. By the metrics provided in the *Jones* and *Ramsundar* cases, even if Mitchell qualified as a

vulnerable individual by CDC standards, he has failed to show Respondents have acted with deliberate indifference to his medical needs.[5]

Based upon the facts and circumstances presented, Mitchell has not established he is a vulnerable individual or that Respondents have shown deliberate indifference to his risk of contracting COVID-19. Thus, the Court denies his substantive due process claim. For all the reasons discussed above, Mitchell has failed to show irreparable harm or likelihood of success on the merits of his claim and, thus, has failed to meet his burden for a preliminary injunction or temporary restraining order.

## CONCLUSION

Mitchell's petition is DENIED in part to the extent he moves for an injunction ordering his release and for other relief related to COVID-19. In accordance with the Court's previous order, the Court will address Mitchell's remaining claims in a later decision.

Dated:     September 29, 2020
           Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE

---

[5] Because Mitchell's COVID-19 claims fail even under the *Jones-Ramsundar* cases, this Court need not decide whether a more stringent standard may apply.