UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



O'NEIL DAMION MITCHELL,

       Petitioner,

     v.                                                           20-CV-1183 (JLS)

CHAD WOLF, JAMES McHENRY,
THOMAS FEELEY, JEFFREY
SEARLS, DEPARTMENT OF
HOMELAND SECURITY,
          Respondents.

---

## DECISION AND ORDER

Petitioner O'Neil Damion Mitchell ("Petitioner"), an immigration detainee currently detained at Buffalo Federal Detention Facility ("BFDF"), seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Dkt. 1. Mitchell also sought injunctive relief in the form of his immediate release due to the conditions at BFDF and potential spread of COVID-19 at that facility. This Court denied such relief in a decision and order dated September 29, 2020—and reserved decision on Mitchell's remaining claims for a later decision. Dkt. 6. The Court now addresses the remainder of Mitchell's claims in his petition, his pending motions for reconsideration and other relief, and Respondents' motion to dismiss based on the petition being premature.

For the reasons discussed below, Mitchell's motions for reconsideration and to enforce the injunction are denied and Respondents' motion to dismiss is granted. The petition is dismissed.

**BACKGROUND**

## I.   FACTUAL BACKGROUND & IMMIGRATION PROCEEDINGS

Mitchell is a native and citizen of Jamaica.  Dkt. 1, at 136.  He entered the United States as a lawful permanent resident on June 12, 1996.  Dkt. 15, Declaration of Jason A. Marshall ("Marshall Decl.") ¶ 4.

Mitchell has various convictions during his time in the United States for various drug, weapon, and driving charges.  *See generally* Marshall Decl. ¶¶ 6-26.  On two occasions, due to these arrests, Mitchell was served with a Notice to Appear alleging he was removable under the Immigration and Nationality Act for his convictions—first in 2010 and again in 2015.  Marshall Decl. ¶¶ 8-9, 12-13.

Most recently, in February 2018, Mitchell was arrested and charged with multiple counts relating to drug possession and conspiracy.  Marshall Decl. ¶ 24.  He was convicted on June 7, 2018, of one drug conspiracy count and one attempted drug possession count, for which he was sentenced to one to three years and five years, respectively.  Marshall Decl. ¶ 25.

On November 19, 2019, Mitchell was served with a Notice to Appear, which charged him with being subject to removal pursuant to INA § 237(a)(2)(A)(iii), § 237(a)(2)(B)(i), and § 237(a)(2)(A)(iii) for an aggravated felony of illicit trafficking of a controlled substance in violation of the controlled substance law, and an aggravated felony attempt of the conspiracy charge.  Marshall Decl. ¶ 28.  On December 16, 2019, DHS detained Mitchell, who was previously incarcerated at Wende Correctional Facility.  Marshall Decl. ¶¶ 29-30.

Mitchell requested that an immigration judge ("IJ") review his custody determination and provided evidence in support of this request.  Marshall Decl. ¶¶ 30-31.  On February 24, 2020, Mitchell admitted the allegations in the Notice to Appear, conceded the first two charges, and applied for withholding of removal, asylum, and protection under the Convention Against Torture.  Marshall Decl. ¶ 32. That day, the IJ found Mitchell removable, denied Mitchell's request for a change in custody status, and ordered mandatory detention.  Marshall Decl. ¶¶ 33-34.

At a hearing held on April 24, 2020, IJ Aikman determined Mitchell was not eligible for withholding of removal or asylum, denied deferral of removal under the Convention Against Torture, and ordered Mitchell removed to Jamaica.  *See* Dkt. 15-2 (copy of IJ's decision).  Mitchell filed an appeal of this decision on May 26, 2020.  Marshall Decl. ¶ 39.  On October 22, 2020, the Board of Immigration Appeals dismissed Mitchell's appeal.  Marshall Decl. ¶ 42; *see* Dkt. 15-4 (copy of the BIA decision).

ICE reviewed Mitchell's custody status several times, including on April 28, 2020, on June 19, 2020, and August 3, 2020.  Marshall Decl. ¶¶ 38, 40, 41; Dkt. 7, at 7-8; Dkt. 13-1; Dkt. 15-3.

## II.   PROCEDURAL HISTORY

Mitchell filed an emergency petition under 28 U.S.C. § 2241 on September 1, 2020.  Dkt. 1.  Mitchell asserted that Respondents were showing deliberate indifference to his risk of contracting COVID-19, particularly in light of his "underlying disease" of high-blood pressure.  Dkt. 1, at 141.  On September 9, 2020,

this Court entered a text order directing expedited briefing on Mitchell's request for a preliminary injunction and COVID-19-related claims, and ordering a standard briefing schedule for the underlying habeas petition. Dkt. 2. Respondents responded to the request for injunctive relief on September 16, 2020. Dkt. 3.

On September 29, 2020—without yet having received a reply from Mitchell— this Court entered a Decision and Order (hereinafter "Sept. 29 Decision and Order") denying Mitchell's requested injunctive relief related to COVID-19. *See generally* Dkt. 6. This Court analyzed Mitchell's claims using the framework provided by the *Jones-Ramsundar* cases, which addressed similar challenges to conditions of confinement based on deliberate indifference to the risk of the spread of coronavirus at BFDF. Dkt. 6, at 6-12. This Court concluded that, under that framework, Mitchell had failed to show he suffered from medical conditions making him vulnerable as defined by the CDC or that Respondents acted with deliberate indifference to his medical needs. *Id.*

Shortly after entry of the Sept. 29 Decision and Order, this Court received Mitchell's reply.[1] *See* Dkt. 7. In a text order dated October 5, 2020, the Court acknowledged receipt of Mitchell's reply and instructed Respondents to address the reply in their forthcoming briefing, including whether the arguments raised by Mitchell merited reconsideration of the decision and order dated September 29,

---

[1] Mitchell's reply is dated as submitted on September 26, 2020 and served on September 28, 2020. Dkt. 7, at 8-9. It was received and docketed by the Court on October 1, 2020—two days after this Court issued its Decision and Order. Dkts. 6,7.

2020.  Dkt. 8.  Mitchell also filed a separate motion for reconsideration on October

13, 2020.  Dkt. 10.

On October 26, 2020, Respondents filed a motion to dismiss the petition as

premature.  Dkt. 11; *see also* Dkts. 12-17 (supporting documents).  Respondents

argued the petition was premature because Mitchell's order of removal became

administratively final on October 22, 2020 and, thus, as of October 26, 2020 he had

been detained under Section 1231(a) for less than a week—far less than the six

months of presumptively reasonable detention provided for in *Zadyvdas v. Davis*,

553 U.S. 678 (2001).  Dkt. 17, at 6-7.  Respondents also argued that Mitchell's

requests for reconsideration (Dkts. 7, 10) of the Sept. 29 Decision and Order should

be denied because he failed to show a compelling reason for altering the decision.

Dkt. 17, at 4-5.  Respondents cited the Declaration of Dr. Eugene Charbonneau,

who stated that Mitchell's high blood pressure is well-controlled and he faces no

greater risk from a COVID-19 infection than an individual in the general

population.  *Id.*; *see* Dkt. 14, Charbonneau Declaration ("Charbonneau Decl.") ¶¶ 3,

6.

Mitchell filed a reply on December 15, 2020, as well as a "Motion to Enforce

Preliminary Injunction."  Dkts. 21, 22.  In his reply, Mitchell states he has filed a

petition for review with the Second Circuit, which is currently pending.  Dkt. 22, at

3-4.  He argues his continued detention beyond the removal period is unlawful

pursuant to *Zadvydas* because he is not likely to be removed in the reasonably

foreseeable future.  *See generally* Dkt. 22, at 5-7.  In both his motion for

reconsideration and motion to enforce injunction, Mitchell cites to *Fraihat v. U.S. Immigr. & Customs Enf't*, 445 F. Supp. 3d 709 (C.D. Cal. 2020), *order clarified*, No. EDCV191546JGBSHKX, 2020 WL 6541994 (C.D. Cal. Oct. 7, 2020), and states he has not received a custody review as required under the clarified order in that case. Dkts. 7, 10, 21.

## DISCUSSION

### I.   JURISDICTION

Habeas corpus review is available to persons who are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Circuit courts have jurisdiction, to the exclusion of district courts, over challenges to the legality of final orders of deportation, exclusion, and removal. *See Gittens v. Menifee*, 428 F.3d 382, 384 (2d Cir. 2005) ("[The REAL ID Act, 119 Stat. 231, § 106(a) (May 11, 2005)] eliminates habeas jurisdiction over final orders of deportation, exclusion, and removal, providing instead for petitions of review . . . which circuit courts alone can consider."). District courts, however, can review claims by aliens challenging the constitutionality of their pre-removal detention. *See Demore v. Kim*, 538 U.S. 510, 516-17 (2003).

### II.   RECONSIDERATION OF THIS COURT'S SEPT. 29, 2020 DECISION

As the Second Circuit has explained, "[t]he standard for granting a [motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked— matters, in other words, that might reasonably be expected to alter the conclusion

6

reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)

(citing *Schonberger v. Serchuk*, 742 F. Supp. 108, 119 (S.D.N.Y. 1990); *Adams v.*

*United States*, 686 F. Supp. 417, 418 (S.D.N.Y. 1988)). "The major grounds

justifying reconsideration are an intervening change of controlling law, the

availability of new evidence, or the need to correct a clear error or prevent a

manifest injustice." *Virgin Atl. Airways v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255

(2d Cir. 1992) (citations omitted). A motion for reconsideration may not be used

merely as a vehicle for rearguing the merits of the challenged decision. *Fleming v.*

*New York Univ.*, 865 F.2d 478, 484 (2d Cir. 1989).

To the extent that Mitchell repeats arguments or facts raised in his initial

petition, which this Court already addressed, the Court finds no grounds to

reconsider its decision of September 29, 2020. For the same reasons discussed in

the prior decision, Mitchell's submissions do not establish that Respondents have

acted with deliberate indifference or violated due process towards Mitchell's serious

medical needs or his current conditions of confinement.

This Court has reviewed Mitchell's arguments surrounding *Fraihat v. U.S.*

*Immigr. & Customs Enf't*, 445 F. Supp. 3d 709 (C.D. Cal. 2020), *order clarified*, No.

EDCV191546JGBSHKX, 2020 WL 6541994 (C.D. Cal. Oct. 7, 2020), which Mitchell

discusses in his reply (Dkt. 7), motion for reconsideration (Dkt. 10), and the motion

to enforce preliminary injunction (Dkt. 21).

The court in *Fraihat* ordered injunctive relief against ICE and certified

subclasses of all ICE detainees throughout the entire country whose risk factors or

7

disabilities place them at heightened risk of severe illness and death upon contracting the COVID-19 virus. The April 20, 2020 preliminary injunction required ICE to "make timely custody determinations for detainees with Risk Factors, per the latest Docket Review Guidance." *Fraihat*, 445 F. Supp. 3d at 751. Risk factors include "having chronic health conditions, including . . . high blood pressure." *Id.* at 736 n.20.

Respondents do not discuss the applicability of the *Fraihat* orders in this case. In opposing reconsideration of the Sept. 29 decision, Respondents cite the declaration of Dr. Eugene Charbonneau. Dkt. 17, at 4-5. Dr. Charbonneau states that, in his medical opinion, Mitchell's high blood pressure "does not rise to the level that he would be deemed a vulnerable individual under CDC guidance" and he "faces no greater risk of a bad outcome from COVID-19 than anyone else in the general population." Charbonneau Decl. ¶¶ 3, 6. Dr. Charbonneau's assessment is based on a review of Mitchell's medical records; specifically, Dr. Charbonneau notes that, besides a slightly elevated first reading in December 2019, the approximately fifteen blood pressure readings since then show his blood pressure within acceptable limits. Charbonneau Decl. ¶ 4. Dr. Charbonneau's conclusion is supported by the medical records provided by Mitchell with his petition. *See, e.g.*, Dkt. 1, at 44, 64, 70. Based on its own review of the record, the Court does not have sufficient evidence to conclude Mitchell's high blood pressure qualifies as a chronic condition or rises to the level that he is a medically "vulnerable individual" as defined by CDC criteria. *See generally* Dkt. 1.

The Court also notes that Mitchell has requested—and received—custody redetermination reviews, including on June 19, 2020 and August 3, 2020. Dkt. 13, Searls Declaration ("Searls Decl.") ¶ 3; Marshall Decl. ¶¶ 34, 38, 40, 41. Mitchell's reply states that he "filed [a] request for release pursuant to *Fraihat* with . . . ICE asking for his release from detention based upon his underlying high blood pressure condition." Dkt. 7, at 7-8. After this request was denied on June 19, 2020, Mitchell explains he "gathered more evidence" to support his request for release, but received a denial on or about August 3, 2020. *Id.* at 8; *see also* Dkt. 1, at 12, 14 (notifications of denials of request for release, dated June 19, 2020 and August 3, 2020); Dkt. 13-1 (copies of same); Dkt. 15-3 (copies of same).

Based on the documents submitted regarding Mitchell's health conditions, and the undisputed fact that Mitchell has requested and received several custody reviews, Mitchell has not established he is a vulnerable individual who is entitled to release or other relief on his COVID-19-related claims. As in its earlier decision, the Court concludes that Mitchell's continued detention in light of the COVID-19 pandemic is not unlawful or unconstitutional—and concludes Mitchell's arguments concerning court orders in *Fraihat* do not merit reconsideration of this Court's decision. Insofar as Mitchell argues that he has a medical diagnosis implicated in the subclass identified in *Fraihat*, and that Respondents have not complied with *Fraihat* and its progeny, he must seek relief in that court. *Hango v. Nielsen*, No. 1:19-CV-606, 2020 WL 5642112, at *4 n.5 (N.D. Ohio Sept. 22, 2020) ("To the extent

9

[petitioner] suggests that 'he should be released under the class-wide injunction of *Fraihat*'. . . he must seek relief in that court.").

Mitchell's motion for reconsideration (Dkt. 10) and motion to enforce the preliminary injunction (Dkt. 21) are denied.

## III.   MITCHELL'S PETITION IS PREMATURE UNDER *ZADVYDAS*

Mitchell also argues that his continued detention is unlawful in light of *Zadvydas* and that he entitled to release from custody because he will not be removed in the reasonable foreseeable future.  Dkt. 22, at 5.  In its motion to dismiss, the Government argues the petition is premature because Mitchell has been detained under Section 1231(a) for less than six months and, thus, his detention is presumptively reasonable.  Dkt. 17, at 3-4.

### A. Detention Pursuant to Section 1231 & *Zadvydas*

8 U.S.C. § 1231 governs the detention of noncitizens who are subject to final orders of removal.  Section 1231(a)(1)(A) directs the Attorney General to remove the noncitizen from the United States within a period of 90 days, known as the removal period.  *Id.* § 1231(a)(1)(A).

In particular, Section 1231(a)(1)(B) states that the removal period begins at the latest of the following events:

(i)     The date the order of removal becomes administratively final.
(ii)    If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
(iii)   If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*Id.* § 1231(a)(1)(B).  Under 8 C.F.R. § 1241.1(a), an order of removal made by an immigration judge "shall become final . . . [u]pon dismissal of an appeal by the Board of Immigration Appeals."

During the 90-day removal period, detention is mandatory.  *Id.* § 1231(a)(2). Once this removal period is over, detention is discretionary: Section 1231(a)(6) authorizes the Attorney General to detain three classes of persons "beyond the removal period," subject to periodic custody reviews conducted by ICE pursuant to 8 C.F.R. § 241.4.  *Id.* § 1231(a)(6).

In *Zadvydas v. Davis*, 553 U.S. 678 (2001), the Supreme Court determined that Section 1231(a) authorizes detention after a final order of removal for a period "reasonably necessary" to effectuate the alien's removal from the United States.  *See Zadvydas*, 533 U.S. at 699-700.  In other words, once removal is no longer reasonably foreseeable, continued detention is no longer authorized by the statute. *See id.*  The Supreme Court held that detention of a noncitizen for up to six months under Section 1231 is "presumptively reasonable."[2]  *Id.* at 701.  After this six-month

---

[2] The Government's brief suggests that the six-month presumptively reasonable detention period set forth in *Zadvydas* starts after the expiration of the statutory 90-day removal period.  *See* Dkt. 17, at 3.  However, without Second Circuit precedent to the contrary, this Court agrees with persuasive authority that interprets the six-month presumptively reasonable period of detention under *Zadvydas* begins after the entry of a final order of removal.  *See Brathwaite v. Barr*, 475 F. Supp. 3d 179, 193 n.9 (W.D.N.Y. 2020) (citing *Callendar v. Shanahan*, 281 F. Supp. 3d 428, 436 n.7 (S.D.N.Y. 2017) (collecting cases)); *see also Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) (citing *Zadvydas*, 553 U.S. at 701); *Ma v. Ashcroft*, 257 F.3d 1095, 1102 n.5 (2001) (citing Zadvydas, 553 U.S. at 701).

period, the Court explained, "once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the [g]overnment must respond with evidence sufficient to rebut that showing." *Id.*

## B. Mitchell Is Not Entitled to Relief under *Zadvydas*

Mitchell was ordered removed on April 24, 2020. *See* Dkt. 15-2. His appeal of that order was dismissed by the BIA on October 22, 2020. *See* Dkt. 15-4. Mitchell's order of removal became administratively final when the BIA dismissed his appeal—affirming the immigration judge's order of removal—on October 22, 2020. Because this October 22, 2020 date is the latest of the triggering events listed in Section 1231(a)(1)(B),[3] the removal order became administratively final on October 22, 2020.

Here, Mitchell has been detained under Section 1231 for just under six months—his detention remains within the presumptively-reasonable period provided in *Zadvydas*. Thus, any claim that his detention under Section 1231 has been unduly prolonged would be premature under *Zadvydas*. *See Ousman D. v.*

---

[3] In his papers, Mitchell claims to have filed a petition for review with the Second Circuit. Dkt. 22, at 2-3. The Government disputes that Mitchell has a pending petition for review, and this Court's search has not revealed any case involving Mitchell at the Second Circuit. Even assuming that Mitchell does have a pending petition for review with the Second Circuit, he has not indicated that he has moved for a stay pending appeal, nor received one. 8 U.S.C. § 1231(a)(1)(B)(ii) applies only if a petitioner files a motion for a stay and the Second Circuit grants the motion. *See Brathwaite,* 475 F. Supp. at 186. Further, Mitchell was released from non-immigration custody on December 16, 2019. Marshall Decl. ¶ 29. At this time, the triggering event for Mitchell's custody pursuant to 8 U.S.C. § 1231(a)(1)(B) is his removal order becoming administratively final.

*Decker*, No. CV 20-2292 (JMV), 2020 WL 1847704, at *7 (D.N.J. Apr. 13, 2020) ("As

for Petitioner's argument that his likelihood of removal is unforeseeable, his

argument is premature as he has not yet met the six-month period of detention[ ]

that would trigger this inquiry under *Zadvydas*."); *Frederick v. Feeley*, No. 19-CV-

6090-FPG, 2019 WL 1959485, at *4 (W.D.N.Y. May 2, 2019) (dismissing petition

as premature when the petitioner "ha[d] not been detained beyond the

presumptively reasonable period of detention").  Even though the six-month period

is set to expire shortly, Mitchell's petition is premature. *See Gomez v. Whitaker*, No.

6:18-CV-06900-MAT, 2019 WL 4941865, at *5 (W.D.N.Y. Oct. 8, 2019) (dismissing

petition as premature where the presumptively reasonable six-month period

expired less than a month before and the petitioner could not establish "good reason

to believe that there is no significant likelihood of removal in the reasonably

foreseeable future" ).

Accordingly, this Court dismisses Mitchell's petition under Section 1231 as

premature.[4]  This dismissal is without prejudice to Mitchell's refiling his petition

after his detention under Section 1231 has lasted longer than six months if he can,

at that point, "provide[ ] good reason to believe that there is no significant likelihood

of removal in the reasonably foreseeable future." *See Zadvydas*, 533 U.S. at 701.

---

[4] In light of this dismissal, the Court need not address Respondents' argument that
the only proper Respondent in this case is Jeffrey Searls and all other Respondents
should be stricken. *See* Dkt. 17, at 4.

13

## CONCLUSION

For the reasons explained above, Mitchell's motion for reconsideration (Dkt. 10) is DENIED; Mitchell's motion to enforce the preliminary injunction (Dkt. 21) is DENIED; and Respondents' motion to dismiss (Dkt. 11) is GRANTED.  Mitchell's petition is DISMISSED.  The Clerk of Court shall enter judgment and close this case.


SO ORDERED.

Dated:      April 15, 2021
            Buffalo, New York


_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE